IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
─────────────────────────────
                              :
MICHAEL J. MALOUF,            :
                              :
          Plaintiff,          :        Civil Action
                              :        No. 09-2117 (JBS/KMW)
     v.                       :
                              :
DR. TURNER, et al.,           :             OPINION
                              :
          Defendants.         :
─────────────────────────────
```

APPEARANCES:

Anthony L. Marchetti, Esq.
MARCHETTI LAW, P.C.
900 N. Kings Hwy Suite 306
Cherry Hill, NJ 08034
     Counsel for Plaintiff

Paul J. Fishman
United States Attorney
     By:  Mark C. Orlowski
          Assistant United States Attorney
U.S. ATTORNEY'S OFFICE
401 Market Street P.O. Box 2098
Camden, NJ 08101
     Counsel for Defendants

**SIMANDLE**, District Judge:

I.   **INTRODUCTION**

This matter comes before the Court on the motion to dismiss
for lack of jurisdiction and for summary judgment by Defendants
United States of America, Bureau of Prisons, Jeff Grondolsky,
Steven Spaulding, Dr. Nicoletta Turner-Foster, and Dr. Abigail
Lopez de Lasalle (collectively, "Defendants").  [Docket Item 53.]
Plaintiff, a federal prisoner formerly incarcerated at FCI Fort
Dix, alleges in his Amended Complaint that Defendants violated

his Eighth Amendment rights due to deliberate indifference to his serious medical condition, rights under "both Federal and State Law" due to retaliation, and also alleges they injured him via negligence and medical malpractice during the time of his incarceration at FCI Fort Dix.  Defendants argue mainly that the Court should grant summary judgment against Plaintiff's constitutional claims on the basis of Plaintiff's alleged failure to exhaust administrative remedies, and on the basis of various immunities.  The Defendants also argue that the Court should dismiss Plaintiff's tort claims for lack of subject matter jurisdiction because Plaintiff did not present an administrative tort claim to Defendant Bureau of Prisons (hereafter "BOP") prior to filing his original Complaint.  As explained below, the Court will grant in part and deny in part Defendants' motion.  The Court will grant in part and deny in part Defendants' motion to dismiss Plaintiff's Federal Tort Claims (Counts II and III), and will grant Defendants' motion for summary judgment against Plaintiff's constitutional claims (Counts I and IV).

## II.  FACTS AND PROCEDURAL HISTORY

The following facts are stated in the parties' statements of material facts not in dispute, relevant to the present motion, supported in the record, and are not disputed through admissible evidence by the parties.  Where facts are disputed, the Court

will identify the dispute and determine whether it involves a genuine dispute of material fact defeating summary judgment.

Plaintiff suffered injuries to his back prior to his incarceration at FCI Fort Dix, leading him to take pain medication. Malouf Decl. ¶ 2, Docket Item 62. Plaintiff was transferred to FCI Fort Dix in January or February of 2008. Malouf Decl. ¶ 3; Turner Decl. ¶ 4, Docket Item 53. Plaintiff was assigned to at least two primary care physicians while at Fort Dix; his first primary physician was non-defendant Dr. Pradip Patel, serving from Plaintiff's arrival until March of 2009. Turner Decl. ¶¶ 4, 8. His second primary physician was Defendant Dr. Turner-Foster, who served as his physician from March 2009 until approximately December of 2009. Turner Decl. ¶ 4.

Beginning in October of 2008, Plaintiff was prescribed Oxycodone, which he took for approximately the next four or five months to treat pain in his back. Malouf Decl. ¶¶ 4, 6; Turner Decl. ¶ 7. At some point in January of 2009, Plaintiff alleges that he slipped and fell on some ice between buildings, which he claimed aggravated the pain in his lower back. Malouf Decl. ¶ 5. As a result of this alleged injury, he made use of a wheelchair and increased his dosage of Oxycodone. Id.

On March 10, 2009, Defendant Dr. Turner, along with Defendant Dr. Lopez de Lasalle, met with Plaintiff regarding his Oxycodone prescription. Malouf Decl. ¶ 6; Turner Decl. ¶ 7;

3

Lopez de Lasalle Decl. ¶ 4.  The Defendants believed that Oxycodone was not appropriate for long-term use treating chronic pain like Plaintiff's.  Turner Decl. ¶ 7; Lopez de Lasalle Decl. ¶ 4.  Consequently, Defendants Turner and Lopez de Lasalle decided to reduce Plaintiff's use of Oxycodone and prescribe him different pain medicines.  Id.  Plaintiff declares that after this meeting, his access to Oxycodone was terminated immediately, whereas Dr. Lopez de Lasalle declares that she tapered his Oxycodone use during a transition period.  Malouf Decl. ¶ 6; Lopez de Lasalle ¶ 4.  Regardless, after this appointment, Plaintiff's pain was primarily treated through other pain medications.  Turner Decl. ¶ 7.  Specifically, Defendant Turner prescribed or authorized a prescription for approximately eight different pain medications from the BOP list of approved medications.  Turner Decl. ¶¶ 5, 6.  Plaintiff declares that these other medications were ineffective at treating his pain. Malouf Decl. ¶ 9.

The pain in Plaintiff's back caused him to collapse in his cell in the middle of the night later in March of 2009.  Malouf Decl. ¶ 7.  Plaintiff claims that Defendant Spaulding, the Health Services Administrator for Fort Dix, denied Plaintiff's request to transfer to the medical unit or to the hospital for evaluation.  Id.  Defendant Turner declares that a nurse was called to evaluate Plaintiff in his cell and found him lying on the floor of his housing unit, whereupon he was moved to health

services for evaluation and treatment.  Turner Decl. ¶ 17, Ex. 1
to Answer, Docket Item 22.

Later that month, Defendant Turner recommended Plaintiff be
given a CT scan and an MRI scan of his spine at different times,
which were approved and provided.  Turner Decl. ¶ 8.  Defendant
Turner additionally recommended Plaintiff see a neurosurgeon for
consultation, which was also approved.  Id.  Plaintiff met with
Defendant Turner at least eight more times over the nine month
period she was treating him, and he was treated at least 17 other
times by other medical personnel.  Id.  Plaintiff claims that he
suffered extreme pain during this period, and all individual
Defendants, including Defendant Spaulding and Defendant
Grondolsky, the Warden at Fort Dix at the time, were aware of his
pain but "engaged in a course of conduct that ignored [his]
complaints and made them worse."  Malouf Decl. ¶ 9.  Plaintiff
describes this course of conduct as including "ineffective
modifications" to his pain medication.  Id.  He also declares
that at some point, Defendant Lopez de Lasalle ordered that his
wheelchair be taken away.  Malouf Decl. ¶ 13.  Plaintiff was
ultimately transferred to FMC Devens, Massachusetts, in May of
2010.  Plaintiff alleges that the medical treatment he received,
which he believes to have been inadequate, was as a result of
retaliation for his complaints and for filing the instant
lawsuit.  Malouf Decl. ¶ 28.

Plaintiff filed an administrative grievance ("Remedy 532854") with Defendant Warden Grondolsky in April of 2009, claiming that he was suffering extreme pain as a result of Defendant Turner's treatment, specifically, her decision to end his Oxycodone prescription, and requested that he be assigned a different doctor or be transferred immediately to a medical facility.  Moran Decl. Ex. 3.  Defendant Grondolsky denied this grievance on May 4, 2009, after reviewing the treatment Plaintiff was receiving.  Id.  Grondolsky explained that Plaintiff could appeal the grievance to the regional director within 20 days. Id.

Plaintiff filed his original Complaint pro se in this matter on May 1, 2009, seeking injunctive relief and damages for various constitutional violations, including Eighth Amendment cruel and unusual punishment as a result of his medical care, retaliation by Defendant Turner, and medical negligence, and included an emergency motion for injunctive relief.  [Docket Item 1.]

Despite having filed his Complaint in this Court, Plaintiff appealed his administrative grievance to the regional director on May 11, 2009.  Moran Decl. Ex. 3.  On June 12, 2009, the regional director responded, reviewing the warden's decision and the treatment Plaintiff had received since his appeal, and concluding that the additional treatment he had received amounted to a partial granting of Plaintiff's requests, but denying further relief.  Id.  The regional director explained that Plaintiff had

30 days to appeal the decision to the BOP General Counsel.  Id. Plaintiff timely appealed to the central office in June or July of 2009.  Marchetti Decl. Ex. B.  Moran Decl. ¶ 4.  This appeal was ultimately denied on March 30, 2010.  Moran Decl. Ex. 3.

Plaintiff was appointed pro bono counsel in this matter on September 21, 2009.  [Docket Item 27.]  Plaintiff, through counsel, moved to file an amended complaint on June 17, 2010, proposing to add FTCA claims for premises liability and medical negligence.  [Docket Item 42.]  In July of 2010, Plaintiff filed an administrative tort claim with the BOP, which was received by the BOP on July 26, 2010.  Moran Decl. ¶ 7 and Ex. 6.  The tort claim alleged that Plaintiff slipped on ice at FCI Fort Dix due to unsafe conditions in January of 2009, and that the pain he experienced was "unconstitutionally treated" and that he had not been treated correctly or fairly.  Moran Decl. Ex. 6.  He sought damages for his injuries in the amount of $5 million.  Id.  The BOP denied Plaintiff's tort claim on September 8, 2010, on the grounds that it raised a constitutional claim.  Moran Decl. Ex. 7.

Plaintiff's motion to file an amended complaint was granted on October 1, 2010.  Plaintiff subsequently filed his Amended Complaint on October 8, adding FTCA claims for premises liability (Count III), medical negligence (Count II), and repeating his allegations of constitutional violations of his Eighth Amendment right to be free of cruel and unusual punishment due to his

medical treatment (Count I), and retaliation (Count IV).  [Docket Item 48.]

Defendants claim that, because Plaintiff had not exhausted his administrative grievance or filed his administrative tort claim prior to filing his original Complaint, the Court must dismiss Plaintiff's FTCA claims for lack of jurisdiction, and grant summary judgment against his constitutional claims. Additionally, Defendants Grondolsky and Spaulding seek summary judgment against Plaintiff's constitutional claims as a result of lack of personal involvement; Defendant Spaulding seeks summary judgment as a result of statutory immunity as an officer of the PHS pursuant to 42 U.S.C. § 233(a); and all four individual defendants seek summary judgment due to qualified immunity.


## III. DISCUSSION

### A.  Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  Id.  Disputes over

irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.

Summary judgment will not be denied based on mere allegations or denials in the pleadings; instead, some evidence must be produced to support a material fact.  Fed. R. Civ. P. 56(c)(1)(A); United States v. Premises Known as 717 S. Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993).  The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

> [Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Celotex, 477 U.S. at 323.

However, the Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party.  Hunt v. Cromartie, 526 U.S. 541, 552 (1999).  See also Scott v. Harris, 550 U.S. 372, 378 (2007) (The district court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion.").

**B.    Rule 56(d) Affidavit**

Plaintiff responds to several of Defendants' arguments, in part, by claiming that he is unable to effectively oppose Defendants' motion because he requires additional discovery.  For example, Plaintiff's counsel attached to Plaintiff's brief in opposition a declaration that states at one point that "Plaintiff respectfully requests that the motion be denied without prejudice to permit discovery."  Marchetti Decl. ¶ 5.

A party that opposes summary judgment on the grounds of insufficient discovery has the ability to do so through Rule 56(d), Fed. R. Civ. P.  Rule 56(d) states:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).  The Third Circuit has long interpreted this rule (and its predecessor, Rule 56(f)) to require that "a party seeking further discovery in response to a summary judgment motion submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained."  Dowling v. City of Philadelphia, 855 F.2d 136, 140-41 (3d Cir. 1988).  Provided that a party opposing summary judgment files an affidavit that addresses these three requirements with specificity, and especially when particular information,

necessary to the successful opposition to summary judgment, is in the sole possession of the moving party, the Third Circuit has held that "a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course." Sames v. Gable, 732 F.2d 49, 51 (3d Cir. 1984).  Vague or general statements of what a party hopes to gain through a delay for discovery under Rule 56(d) are insufficient.  Hancock Indus. v. Schaeffer, 811 F.2d 225, 230 (3d Cir. 1987).

In the present matter, the Court concludes that Plaintiff's counsel's vague and general statement that the motion should be denied because "discovery is not complete" is insufficient to meet the requirements of Rule 56(d).  Plaintiff articulates no specific facts that he believes further discovery would reveal. The Court will, therefore, not deny or delay summary judgment on the basis of insufficient discovery.

### C. FTCA Claims

Plaintiff seeks relief from these federal Defendants through four claims; two claims (Counts II and III) are brought under the Federal Tort Claims Act, and two claims (Counts I and IV) are for violation of the Constitution, brought pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).  The Court will first address Plaintiff's FTCA claims before turning to Plaintiff's Bivens claims.

1.   <u>Exhaustion of FTCA Claims</u>

To bring suit under the FTCA, by statute, Plaintiff must first present his claim to the relevant agency and have his claim rejected before he can bring that claim in an action before the District Court.  Defendants argue that because Plaintiff failed to present his administrative tort claim before he filed his original Complaint, the Court must dismiss Counts II and III. Plaintiff responds that he met the exhaustion requirement of the FTCA because he properly exhausted his administrative tort claim prior to filing his Amended Complaint.

The Federal Tort Claims Act, 28 U.S.C. § 2671 <u>et</u> <u>seq.</u> is a limited waiver of sovereign immunity.  <u>See</u> 28 U.S.C. § 2674. Thus, the statute's limitations on suit are jurisdictional restrictions.  <u>White-Squire v. United States Postal Svc.</u>, 592 F.3d 453, 456 (3d Cir. 2010).  The FTCA states

> An action shall not be instituted upon a claim
> against the United States for money damages
> for injury or loss of property or personal
> injury or death caused by the negligent or
> wrongful act or omission of any employee of
> the Government while acting within the scope
> of his office or employment, unless the
> claimant shall have first presented the claim
> to the appropriate Federal agency and his
> claim shall have been finally denied by the
> agency in writing and sent by certified or
> registered mail.

28 U.S.C. § 2675(a).  The Supreme Court has stated that any action seeking tort damages from the United States must be dismissed if the action is filed prior to the exhaustion of the administrative tort remedy.  <u>McNeil v. United States</u>, 508 U.S.

12

106, 112 (1993).  The Third Circuit, in a non-precedential opinion, has gone further and held that even a subsequent amended complaint, filed after exhaustion of the administrative tort claim, does not cure the jurisdictional infirmity if the original complaint seeking tort damages was filed prior to exhaustion. Hoffenberg v. Provost, 154 F. App'x 307, 310 (3d Cir. 2005) ("the date of the amended complaint cannot serve as the date the federal suit was 'instituted'".).  The Defendants, therefore, urge the Court to dismiss Plaintiff's FTCA claims for lack of jurisdiction because Plaintiff's original Complaint was filed prior to the exhaustion of his administrative tort claim.

The Court, however, notes that the present case differs in one crucial aspect from Hoffenberg.  In Hoffenberg, the plaintiff's original complaint raised the same FTCA claims as the amended complaint.  154 F. App'x at 309-310.  In the instant action, however, Plaintiff's original Complaint sought only relief for constitutional violations pursuant to Bivens and for medical negligence.  See Compl. at 3-6, Docket Item 1.  The original Complaint does not, however, make any mention of seeking tort damages for premises liability, nor plead any facts related to Plaintiff's alleged January 2009 slip and fall on the ice. Id.  Thus, the question presented by Defendants' motion is whether § 2675(a) restricts this Court's jurisdiction to hear tort claims raised for the first time in an amended complaint after fully exhausting the administrative tort claim, in an

13

action that was originally filed prior to exhaustion by the agency.

The Court first looks to the statutory text.  The statute says that "[a]n action shall not be instituted upon a claim against the United States" for tort damages without proper exhaustion.  § 2675(a) (emphasis added).  Thus, the statute's jurisdictional limit is specific to actions that raise claims for tort damages.  As Plaintiff's action did not raise a claim under the FTCA for tort damages related to his January 2009 slip and fall until he filed his Amended Complaint, which occurred after exhaustion of his administrative tort claim by the BOP, the Court finds no jurisdictional restriction in the plain language of the statute.

The Court finds persuasive support for this interpretation of the statute in the recent Eighth Circuit case of Mackovich v. United States, 630 F.3d 1134 (8th Cir. 2011).  In Mackovich, the plaintiff, a federal prisoner, filed an FTCA claim for medical negligence prior to exhausting any administrative tort claim related to his claims.  Id. at 1134.  He later filed and exhausted an administrative claim with the BOP claiming damages related to premises liability, and then filed an amended complaint abandoning his original claims and seeking damages for a slip and fall.  Id. at 1134-35.  The Eighth Circuit concluded that, because his slip-and-fall claim under the FTCA was not brought in the district court until after he had exhausted his

14

administrative tort claim, the fact that he filed an original complaint prior to exhaustion did not deprive the court of jurisdiction.  Id. at 1135-36 ("We reject the government's contention that the claim was premature because this action was initially filed in August 2008, before the administrative claim was denied. As the district court recognized, Mackovich abandoned his initial claim and commenced an entirely new action when he was granted leave to file his July 2009 amended complaint.").

The Court agrees with the reasoning of the Eighth Circuit and will similarly deny the government's motion to dismiss Plaintiff's premises liability claim (Count III) for lack of jurisdiction because Plaintiff had fully exhausted his administrative tort claim prior to filing his Amended Complaint.

However, the Court finds that this reasoning does not save Plaintiff's claim for medical negligence (Count II).  In that Count, Plaintiff alleges in his Amended Complaint that "Defendants committed professional negligence, acted negligently and failed to act in accordance with the applicable standard of care," that "Defendants had a duty to properly treat Plaintiff" and that "Defendants breached their duty by failing to properly treat and delaying treatment of Plaintiff."  Am. Compl. ¶¶ 70-73. In Plaintiff's original Complaint, by way of comparison, he alleged that "Dr. Turner acted gross and wanton negligence [sic] with regard to my serious medical needs" and that "[t]he actions of the defendants onstitute [sic] breach of duty of care

15

obligated as a matter of federal laws and right." Compl. at 4, 6. The Court therefore concludes that Plaintiff first alleged a claim of medical negligence cognizable under the FTCA in his original Complaint, prior to exhausting his administrative tort claim, and that the Court therefore lacks subject matter jurisdiction to hear it, pursuant to § 2675(a). <u>Hoffenberg v. Provost</u>, 154 F. App'x at 310.

### 2. <u>Proper Defendants Under the FTCA</u>

Finally, Defendants argue that the only proper Defendant under the FTCA is the United States, and that therefore all other Defendants must be dismissed from the FTCA claim. Plaintiff does not respond to this argument. The Court agrees with Defendants that the only proper party to a claim under the FTCA is the United States. <u>See</u> <u>CNA v. United States</u>, 535 F.3d 132, 138 n.2 (3d Cir. 2008) ("The Government is the only proper defendant in a case brought under the FTCA."). Thus, the Court will grant Defendants' motion to dismiss Defendants Bureau of Prisons, Jeff Grondolsky, Steven Spaulding, Dr. Nicoletta Turner-Foster, and Dr. Abigail Lopez de Lasalle from Plaintiff's remaining FTCA claim, Count III.

### D. **<u>Bivens</u> Claims**

As with Plaintiff's FTCA claims, Defendants seek summary judgment against Plaintiff's <u>Bivens</u> claims for failure to exhaust. Plaintiff opposes summary judgment on similar grounds to Defendants' FTCA argument, claiming that he fully exhausted

his administrative remedy prior to filing his Amended Complaint. Unlike the FTCA claim, however, the Court concludes that the statutory text and its interpretation in the Third Circuit holdings require dismissal of his <u>Bivens</u> claims because he filed his <u>Bivens</u> action prior to fully exhausting his claim.

    1.   <u>Exhaustion After Filing The Original Complaint</u>

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, governs particular aspects of litigation by prisoners during the period of their incarceration.  Specifically, § 1997e(a) establishes the requirement of administrative exhaustion:

> [n]o action shall be brought with respect to prison conditions under section 1983  of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

<u>Id.</u>  Plaintiff's <u>Bivens</u> claims fall within the ambit of the PLRA. <u>See</u> <u>Nyhuis v. Reno</u>, 204 F.3d 65, 68 (3d Cir. 2000) ("[Section] 1997e(a) applies equally to § 1983 actions and to <u>Bivens</u> actions.")  Also, the PLRA governs the subject of Plaintiff's <u>Bivens</u> claims, which seek to challenge the conduct of prison officials and the conditions of his confinement.  <u>See</u> <u>Booth v. Churner</u>, 206 F.3d 289, 294 (3d Cir. 2000) (holding that suits by prisoners challenging "conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison" fall within the restrictions of the PLRA).

17

For federal prisoners such as Plaintiff, the BOP has promulgated regulations laying out what steps are necessary to exhaust a grievance pursuant to § 1997e(a).

> The Bureau of Prisons ("BOP") has a three-level administrative process through which an inmate can address issues concerning the conditions of his confinement. See 28 C.F.R. § 542.10. In most cases, an inmate must attempt to informally resolve an issue with prison staff prior to filing a formal grievance. § 542.13. Thereafter, an inmate begins the grievance process by submitting a request for an administrative remedy, on the appropriate form, to the warden. § 542.14. If the inmate is dissatisfied with the warden's response, he may appeal to the appropriate regional director, using the proper form, within 20 days of the date the warden signed the response. § 542.15(a). The inmate may then appeal to the BOP's Central Office. Id.

Smith v. Federal Bureau of Prisons Director, 406 F. App'x 578, 580 (3d Cir. 2011).  Only after the BOP's Central Office has denied the request is the remedy considered exhausted.  Id.

In the instant matter, the parties do not dispute that Plaintiff completed these steps with Remedy 532854, which was originally received by Warden Grondolsky on April 14, 2009, and which was ultimately denied by the Central Office on March 30, 2010.  It is also clear from the docket in this matter that Plaintiff's original Complaint was received by the Court on May 5, 2009, nearly eleven months prior to Plaintiff's full exhaustion of his remedy.  Defendants argue that, because Plaintiff filed his original Complaint in this matter prior to full exhaustion of this remedy, the Court must grant summary

judgment against his <u>Bivens</u> claims for failure to exhaust.
Plaintiff responds that he has complied with § 1997e(a) because
he fully exhausted Remedy 532854 prior to filing his Amended
Complaint.  The issue is therefore whether the filing of an
amended complaint after full exhaustion of administrative
remedies constitutes the bringing of a new "action" within the
meaning of § 1997e(a) and thereby cures the defects of an
original complaint that was filed prior to complete exhaustion.

As the Third Circuit has noted, Circuit Courts are unanimous
in concluding that exhausting an administrative claim after the
filing of an action in federal court does not cure the PLRA
infirmity of failure to exhaust.  <u>See</u>  <u>Oriakhi v. United States</u>,
165 F. App'x 991, 993 (3d Cir. 2006) ("Indeed, there appears to
be unanimous circuit court consensus that a prisoner may not
fulfill the PLRA's exhaustion requirement by exhausting
administrative remedies after the filing of the complaint in
federal court.")  Additionally, the Third Circuit has held that
the filing of an amended complaint after an unexhausted claim is
brought in federal court does not cure the infirmity.  <u>See</u> <u>Ahmed</u>
<u>v. Dragovich</u>, 297 F.3d 201, 209 (3d Cir. 2002) (holding that the
substantial exhaustion standard required under the PLRA did not
extend to "a second-step appeal five months late nor the filing
of a suit before administrative exhaustion, however late, has
been completed.  It follows that Ahmed cannot cure the defect in
his action by the proffered amendment of the complaint.")

The only arguably contrary Circuit case the Court has been able to uncover on this issue merely proves the point that Plaintiff here cannot cure his failure to exhaust through his Amended Complaint.  In the Seventh Circuit case of Barnes v. Briley, 420 F.3d 673 (7th Cir. 2005), the plaintiff initially filed an FTCA claim against the Centers for Disease Control, claiming its negligence had caused him to be exposed to hepatitis while incarcerated in a state prison.  Id. at 675.  Plaintiff later concluded that his exposure and subsequent infection with hepatitis was, in fact, due to the alleged deliberate indifference of the state prison officials, so he filed and exhausted an administrative remedy within the prison system.  Id. at 675-76.  He thereafter filed an amended complaint in his original action, naming the state defendants in an action under 42 U.S.C. § 1983 for cruel and unusual punishment.  Id. at 676. The district court dismissed his claims for failure to exhaust because it found he had instituted his action prior to exhausting his administrative remedies.  Id.

The Seventh Circuit reversed, concluding that the plaintiff's filing his amended complaint, after having exhausted his administrative remedies, "complied with the purpose and letter of the PLRA" because the plaintiff first brought his § 1983 claim in federal court after having fully exhausted the administrative remedy.  Id. at 678.  Thus, the court concluded, it was only once he first filed a § 1983 claim "that it became

necessary to have exhausted the administrative remedies against the state defendants." Id. at 679.

In the present circumstance, by contrast, Plaintiff's original Complaint alleged the same Bivens claims that his Amended Complaint brings.  Thus, the Court cannot conclude, as the Seventh Circuit did in Barnes, that the filing of the Amended Complaint constitutes a new "action" under § 1997e(a).

This reasoning is precisely echoed in the Third Circuit's recent non-precedential opinion of Green v. Department of Corrections, 393 F. App'x 20, 24 (3d Cir. 2010).  There, as here, the plaintiff filed constitutional claims prior to fully exhausting any administrative remedy, but subsequently exhausted administrative remedies and then filed an amended complaint alleging the same constitutional claims he had recently exhausted.  Id.  The court rejected plaintiff's argument that the amended complaint filed after the exhaustion cured his original failure to exhaust.  "It is well-settled that exhaustion must occur prior to filing the action in federal court." Id.  The Circuit then distinguished Barnes v. Briley, as this Court has, on the grounds that in that case, the amended complaint was the first time the constitutional claim was alleged.  Id.  The Court therefore concludes that Plaintiff's full exhaustion of Remedy 532854 and subsequent Amended Complaint did not cure his original failure to exhaust under the PLRA.

2.    <u>Failure to Exhaust and Availability of Remedy</u>

Plaintiff additionally argues that he was unable to fully exhaust his claims because of fear of further retaliation by prison officials and because the BOP refused to accept his administrative remedies.  An administrative remedy must be "available" in order to be exhausted under the PLRA, and Plaintiff claims that these obstacles rendered any remedy regarding his claims to be unavailable.  <u>See</u> <u>Verbanik v. Harlow</u>, 2011 WL 3488979 *2 (3d Cir. Aug. 10, 2011).  The Third Circuit has provided some guidance to determining whether a prisoner's claim that the remedy was not available due to fear of retaliation.

> Although we have held that administrative remedies may be unavailable when prison officials have thwarted an inmate's attempt to exhaust by providing erroneous instructions about the grievance process, we have not addressed the specific question presented here: whether threats of retaliation can render administrative remedies unavailable. Other courts of appeals have concluded that retaliation or threats of retaliation against an inmate for pursuing a grievance may make administrative remedies unavailable to the inmate.  The test for determining whether administrative remedies were available . . . is whether a 'similarly situated individual of ordinary firmness' would have deemed the grievance procedures to be available.

<u>Id.</u> (citations omitted).  The Court concludes, based on the undisputed facts of record, that the evidence does not establish that an administrative remedy was unavailable to Plaintiff prior

to filing either his original Complaint or, even, his Amended
Complaint.

The Court notes that Plaintiff provides no evidence of any
unsuccessful effort to file an administrative grievance prior to
April of 2009.  The Court further notes that the undisputed facts
demonstrate that the first grievance Plaintiff filed, Remedy
532854, was fully exhausted, but not until after he filed his
original Complaint.  The undisputed facts in the record also
demonstrate that Plaintiff additionally filed at least three
other administrative remedies after he filed his original
Complaint (Remedies 605696, 607157, and 611286), but did not
fully exhaust any of them prior to filing his Amended Complaint.
Moran Decl. Ex. 2.  Plaintiff does not, however, state in his
Declaration or present any other admissible evidence tending to
prove that he failed to exhaust these remedies because of either
fear of retaliation or the refusal of any BOP employee to accept
them.

Plaintiff additionally points to evidence in the record that
he has attempted to file administrative remedies that were not
accepted by the Warden or entered into the BOP registry.  He
points, specifically, to only one grievance, attached at
Marchetti Decl. Ex. C, which he alleges was ignored.  However,
the Court notes that this grievance, even if it was actually
ignored as Plaintiff claims, was dated December 21, 2010, and
therefore could not be evidence that Plaintiff attempted to file

a grievance or administrative remedies prior to filing his original Complaint or even his Amended Complaint.  Thus, as Plaintiff can point to no grievance he attempted to file or was prevented from filing prior to either Complaint, the Court finds that none of Plaintiff's evidence supports an inference that Plaintiff was (or any similarly situated individual of ordinary firmness would have been) dissuaded from filing a grievance sufficient to render the remedy "unavailable."

The Court therefore concludes that Plaintiff's <u>Bivens</u> claims, Counts I and IV, were not exhausted prior to bringing this action, and the Court must therefore grant Defendants' motion for summary judgment against these Counts.  The Court will consequently dismiss Plaintiff's Counts I and IV without prejudice.


**IV.   CONCLUSION**

The Court has concluded that the undisputed facts in the record demonstrate that Plaintiff filed his <u>Bivens</u> claims prior to exhausting his administrative remedies as he was required to do under the PLRA, 42 U.S.C. § 1997e(a).  The Court additionally finds that Plaintiff alleged his medical malpractice claim prior to presenting his tort claim to the BOP, as he is required to do under 28 U.S.C. § 2675(a).  However, the Court has found that Plaintiff first brought his premises liability tort claim in his Amended Complaint, which was filed after he exhausted his

administrative tort claim and satisfied the requirements of §
2675(a).  The Court therefore concludes that it must dismiss
Plaintiff's medical malpractice claim (Count II) for lack of
jurisdiction, and must grant Defendants' motion for summary
judgment against Plaintiff's <u>Bivens</u> claims (Counts I and IV) for
failure to exhaust available administrative remedies.
Plaintiff's FTCA claim for premises liability (Count III)
survives, but only against Defendant United States, the only
proper party to an FTCA claim.  Defendants Turner, Lopez de
Lasalle, Spaulding, Grondolsky, and the BOP will, consequently,
be dismissed from this action.  The accompanying Order will be
entered.


**August 31, 2011**                    **  s/ Jerome B. Simandle     **
Date                                   JEROME B. SIMANDLE
                                       U.S. District Judge